```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

**UNITED STATES OF AMERICA** *ex rel.*
**DAVID L. HUMPHREY,**

      **Plaintiff,**

  **vs.**                                               **Civil Action 2:11-CV-361**
                                                           **Magistrate Judge King**

**HOCKING, ATHENS, PERRY COMMUNITY**
**ACTION AGENCY, INC.,** *et al.***,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), for consideration of *Plaintiff's Motion for Leave to File Third Amended Complaint Instanter* ("*Plaintiff's Motion to Amend*"), Doc. No. 61.  Defendants oppose *Plaintiff's Motion to Amend* on the basis that amendment would be futile.  *See* Doc. Nos. 62-63, 65-66.  Plaintiff has filed a reply, Doc. No. 67, and numerous defendants, without first seeking leave, have filed a sur-reply.  Doc. No. 69.  Also before the Court is *Defendants' Joint Motion for Hearing*, Doc. No. 64.  For the reasons that follow, *Plaintiff's Motion to Amend* is **DENIED**.  *Defendants' Joint Motion for Hearing* is **DENIED** as moot.

**I.**    **Background**

This is a *qui tam* action brought by relator David Humphrey on behalf of the United States under the False Claims Act ("FCA"), 31 U.S.C. § 3730.  Plaintiff alleges that defendants have submitted false

claims in connection with the 1993 lease and 2008 acquisition of a building by the Hocking, Athens, Perry Community Action Agency, Inc. ("HAP") for its Head Start Program.  Plaintiff alleges that HAP entered into a 15 year lease (the "Lease") to acquire a building and land in New Lexington, Ohio (the "Property") to be used for the Perry County Head Start Program.  *Second Amended Complaint*, ¶ 16.  HAP allegedly used Head Start funds to obtain and renovate the property without receiving prior approval from the United States.  *Id*. at ¶¶ 44-45, 51.  The United States declined to intervene.

The *Preliminary Pretrial Order*, Doc. No. 24, required that all motions or stipulations addressing the parties or pleadings be filed by December 30, 2011.  Plaintiff amended the *Complaint* on November 17, 2011, *id*., and was granted leave on July 18, 2012, upon unopposed motion, to file a *Second Amended Complaint*.  *See Order*, Doc. No. 49.  Plaintiff now seeks leave to file a third amended complaint to assert a claim under 31 U.S.C. § 3729(a)(1)(G) against two new parties.  *Plaintiff's Motion to Amend*, p. 2.

The *Proposed Third Amended Complaint*, attached to *Plaintiff's Motion to Amend* as pp. 7-18 and Doc. Nos. 61-1, 61-2, purports to state an FCA claim against Attorney John P. Mazza, HAP's attorney in this action, and Douglas Stanley, a former executive director at HAP.  *Proposed Third Amended Complaint*, ¶¶ 13-14, 57-68.  The *Proposed Third Amended Complaint* alleges the following:

"HAP was obligated to record a 'Notice of Federal Interest' in the real estate records to protect the Federal government's interest in the Property for Head Start funds used to acquire and renovate the

2

Property." *Id*. at ¶ 48. Attorney Mazza, acting "under the direction or consent of Stanley," "sent a letter dated November 21, 2011 to the Office of Head Start." *Id*. at ¶¶ 58, 68. The letter allegedly contains three knowingly false statements about the terms of the Lease, the Lease payments, and the classification of the Lease for accounting purposes. *See id*. at ¶¶ 60-66. Attorney Mazza's alleged misrepresentation about the total Lease payments was "intended to avoid the government's Notice of Interest." *Id*. at ¶ 61. The *Proposed Third Amended Complaint* further alleges that the letter "is a false record and statement knowingly made in an attempt to avoid the Federal government's Notice of Federal Interest." *Id*. at ¶ 59. *See also id*. at ¶ 67 ("It is clear Mazza knowingly created a material false record or statement for the purpose of avoiding HAP's obligation to file the Notice of Federal Interest.").

## II. Standard

Whether or not to grant leave to amend a pleading under Fed. R. Civ. P. 15(a)(2) falls within the district court's discretion. *General Elec. Co. v. Sargent & Lundy,* 916 F.2d 1119, 1130 (6th Cir. 1990). In exercising that discretion, the trial court may consider such factors as "undue delay, bad faith or dilatory motive on the part of a movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [and] futility of the amendment." *Foman v. Davis,* 371 U.S. 178, 182 (1962).

"A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford*

3

*Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993)).  A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of the complaint.  *See Roth Steel Prods. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983).  In determining whether dismissal on this basis is appropriate, a complaint must be construed in the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true.  *See Bower v. Fed. Express Corp.,* 96 F.3d 200, 203 (6th Cir. 1996); *Misch v. Cmty. Mut. Ins. Co.,* 896 F. Supp. 734, 738 (S.D. Ohio 1994).

The United States Supreme Court has explained that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  However, a plaintiff's claim for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*. at 555.  In addition, complaints alleging FCA violations must "comply with Rule 9(b)'s requirement that fraud be pled with particularity because 'defendants accused of defrauding the federal government have the same protections as defendants sued for fraud in other contexts.'"  *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003)).  "Rule 9(b) requires that 'in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  *Id.* (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir.

4

2007)). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. Accordingly, a complaint must be dismissed – and amending a complaint is futile – if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

**III. Discussion**

The FCA provides that any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material[1] to an obligation to pay or transmit money or property to the Government . . . is liable to the United States Government for a civil penalty." 31 U.S.C. § 3729(a)(1)(G). "Section 3729(a)(1)(G) claims are often characterized as 'reverse false claims,' as they implicate situations in which the charge is falsehood in paying monies to the United States rather than in securing payment from the government." *United States ex rel. John Stone v. OmniCare, Inc.*, No. 09C4319, 2011 U.S. Dist. LEXIS 73123, at *7 (N.D. Ill. July 7, 2011) (quoting *United States ex rel. Lamers v. City of Green Bay*, 998 F. Supp. 971 (E.D. Wis. 1998)).

The FCA did not originally define the term "obligation." *See Am. Textile Mfgs. Institute, Inc. v. Ltd., Inc.*, 190 F.3d 729, 736 (6th Cir. 1999). On May 20, 2009, Congress enacted the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub.L. No. 111-21, 123 Stat. 1617 (May 20, 2009), § 4 of which amends the FCA to, *inter alia*, define "obligation." *Id*. Under that

---

[1] "[T]he term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

5

provision, an "obligation" is defined as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3).

The Senate Judiciary Committee Report, S. Rep. No. 111-10 (Mar. 23, 2009), indicates that FERA

> addresses [the] current confusion among courts that have developed conflicting definitions of the term "obligation" in Section 3729(a)(7). The term "obligation" is now defined under new Section 3729(b)(3) and includes fixed and contingent duties owed to the government—including fixed liquidated obligations such as judgments, and fixed, unliquidated obligations such as tariffs on imported goods. It is also noteworthy to restate that while the new definition of "obligation" expressly includes contingent, non-fixed obligations, the Committee supports the position of the Department of Justice that current section 3729(a)(7) []speaks of an "obligation," not a "fixed obligation." By including contingent obligations such as, "implied contractual, quasi-contractual, grantor-grantee, licensor-licensee, fee-based, or similar relationship," this new section reflects the Committee's view, held since the passage of the 1986 Amendments, that an "obligation" arises across the spectrum of possibilities from the fixed amount debt obligation where all particulars are defined to the instance where there is a relationship between the Government and a person that "results in a duty to pay the Government money, whether or not the amount owed is yet fixed."

*Id*. at p. 14 (citations omitted)

In the case presently before the Court, the *Proposed Third Amended Complaint* alleges that Attorney Mazza made knowingly false statements in a letter to the Office of Head Start "in an

6

attempt to avoid the Federal government's Notice of Federal Interest." *Proposed Third Amended Complaint*, ¶ 59.  It is further alleged that "HAP was obligated to record [the] 'Notice of Federal Interest' in the real estate records to protect the Federal government's interest in the Property for Head Start funds used to acquire and renovate the Property."  *Id*. at ¶ 48.

The *Proposed Third Amended Complaint* fails to plead a violation of § 3729(a)(1)(G) with particularity because it has not identified an obligation to pay or transmit money or property to the Government.  According to the *Proposed Third Amended Complaint*, the Notice of Federal Interest will "protect the Federal government's interest in the Property" once it is recorded.  *Id*.  The Notice of Federal Interest is not alleged to be an established duty or obligation to pay money or property owed to the Government.  It is not a judgment or retention of an overpayment, nor is it alleged to arise from an implied contractual, quasi-contractual, grantor-grantee, licensor-licensee, fee-based, or similar relationship.  The *Proposed Third Amended Complaint* simply has not alleged, apart from threadbare, conclusory recitals, that the Notice of Federal Interest is a § 3729(a)(1)(G) "obligation" to pay or transmit money or property to the Government.  The *Proposed Third Amended Complaint* therefore fails to allege a colorable cause of action against Attorney Mazza and Douglas Stanley.  Accordingly, *Plaintiff's Motion to Amend* is **DENIED** as futile.

7

Based on the foregoing, *Defendants' Joint Motion for Hearing*, Doc. No. 64, is **DENIED** as moot.

**WHEREFORE**, based on the foregoing, *Plaintiff's Motion to Amend*, Doc. No. 61, is **DENIED**.  *Defendants' Joint Motion for Hearing*, Doc. No. 64, is **DENIED** as moot.

February 7, 2013 *s/Norah McCann King*
Norah M<sup>c</sup>Cann King
United States Magistrate Judge